CHARLES ADAMS, JUDGE, *vs.* ALGERNON S. LEWIS AND ANOTHER.

An application by certain creditors for the appointment of a trustee over the estate of a debtor as an insolvent, was made to a court of probate in January, 1859, the hearing upon which was adjourned from time to time upon the motion or with the assent of the applicants, till February, 1861, when a trustee was appointed. In the mean time the property of the insolvent, consisting mainly of goods in a drug store, was left in his possession, and he carried on business as before. The superior court found that the adjournments were for good and substantial reasons. In February, 1860, a creditor of the insolvent, who had no knowledge of the insolvent proceedings, factorized a debtor of the insolvent, and having soon after obtained judgment, had a demand made upon the garnishee by an officer on the execution. At this time the garnishee knew of the insolvent proceedings, but paid the amount of the debt to the officer. The trustee in insolvency, when appointed, demanded the debt of the garnishee. Held,

1. That the title of a trustee, under our insolvent laws, relates back to the time of the institution of the insolvent proceedings.

2. But that, as the statute with regard to foreign attachment requires a debtor, at the peril of a personal liability for the debt and for costs on further proceedings, to pay to the officer the amount of the debt attached when demanded on the execution, and provides no other remedy in case of a conflicting claim to the debt but the citing in on the scire facias of the claimant to contest the claim of the factorizing creditor, and as here there was no trustee and consequently no claimant, it was the right of the garnishee to pay the amount to the officer, and that by such payment he was absolved from further liability in the matter.

3. That whatever good reasons, affecting the creditors applying for the appointment of the trustee, might exist for so long a delay of the hearing of their application, yet such a delay, with the possession of the property left in the hands of the insolvent, and no claim to the debt in question asserted, could not be re-

garded as justifiable in its relation to strangers to the insolvent proceedings, and that the trustee, representing the rights of the creditors, was estopped by their conduct from asserting his right to the debt attached.

As to order of argument, see page 505.

DEBT, in the name of the judge of probate, on a bond given by the defendants for the faithful discharge, by the defendant Lewis, of the office of trustee of the insolvent estate of William Rogers. The breach assigned was the non-payment of a debt due from the estate of Rogers to the trustee of the insolvent estate of Josiah G. Beckwith, in whose favor the debt had been allowed by the commissioners on the estate of Rogers and a dividend ordered by the court to be paid thereon. The facts were specially found by the superior court.

On the 15th of January, 1859, Josiah G. Beckwith, of Litchfield, was largely indebted to the Litchfield Bank and sundry others; and William Rogers was indebted to Beckwith about $1,000. On that day the receivers of the Litchfield Bank brought a petition to the court of probate praying for the appointment of a trustee to take possession of the property of Beckwith for the benefit of his creditors, upon which petition the court on the same day issued a citation to Beckwith to appear before the court on the 24th of January, 1859, to show cause why the petition should not be granted, which citation was duly served upon him the same day. The receivers and Beckwith appeared before the probate court on the 24th of January, when the hearing upon the application was, by mutual consent, postponed, and was afterwards adjourned from time to time upon the motion or with the assent of the receivers until the 17th of April, 1861, when the receivers and Beckwith were fully heard, and the court ordered that a trustee should be appointed to take possession and dispose of the property of Beckwith under the insolvent laws, and that the trustee should be appointed at the probate office in Litchfield, on the 29th of April, 1861, and that public notice should be given of the time and place by advertising and by posting; and on the 29th of April the court appointed George H. Baldwin, of Litchfield, trustee in insolvency of the estate of Beckwith, who accepted said trust, gave bonds according to law, and proceeded

to the settlement of the estate, which is not yet fully closed, and is deeply insolvent. The hearing upon the application was adjourned twenty-one times, but the adjournments were not effected by any collusive agreement between the receivers and Beckwith, but upon reasons presented to and approved by the probate court, and were deemed by the court necessary and proper for the best interests of the Litchfield Bank and the creditors of Beckwith; and all the adjournments were for good and substantial reasons. During the time the application was so pending Beckwith was the proprietor of a drug store, in which, before the 15th of January, 1859, he had usually kept goods to the amount of from $400 to $500, and was the owner of other personal estate; and he sold goods from the store and bought other goods to keep his stock good, and carried on his business in the same manner that he did before. Upon the appointment of the trustee he surrendered to him all the goods he then had in his business, which were inventoried at about $300. Beckwith collected some debts that were due to him on the 15th of January, 1859, and placed in the hands of the trustee his book accounts, containing evidence of debts accruing to him after the 15th of January to an amount about equal to the amount of debts by him so collected. His other personal estate that went into the possession of the trustee was more valuable than that which he had on hand when the application was first made to the probate court. During the pendency of the application he collected rents of real estate, and appropriated a portion in payment of debts outstanding against him at the time of the commencement of the proceedings in bankruptcy. None of these acts of Beckwith were done with an intent to prevent the collection of any debt which he owed, or to secure any special benefit to himself, or to give any preference to any creditor, and were such acts as were necessary for the proper management of his property then on hand.

The said William Rogers, on the 20th of June, 1859, made a voluntary assignment of all his estate for the benefit of his creditors, and Algernon S. Lewis, one of the defendants, was on the 2d day of July, 1859, appointed trustee of his estate,

accepted the trust, gave bonds according to law, and proceeded to the settlement of the estate in due form of law. The commissioners on the estate allowed a debt in favor of Beckwith against Rogers, amounting to the sum of $1,051.65, and their report was returned to and accepted by the court of probate in due form. The estate of Rogers was settled by Lewis in accordance with law, and the court of probate on the 18th of February, 1860, ordered a dividend of seventeen cents and six and one-third mills on the dollar upon all the claims allowed by the commissioners which were not preferred and paid in full, making a dividend on the debt allowed Beckwith of $185.44.

David M. Wheeler, a creditor of Beckwith, without any personal knowledge of the proceedings against him in the court of probate, on the 28th of February, 1860, brought an action against him for the recovery of his debt, by process of foreign attachment, in which process he alleged that the said Algernon S. Lewis was the trustee of the estate of Rogers, and as such trustee was indebted to Beckwith; a copy of which process was left by the officer who served the same with Lewis on the same day, and the same was returned to and entered in the docket of the superior court, then next to be held in Litchfield on the second Tuesday in April, 1860, to which court the same was made returnable; and the process, by legal continuances, came to the term of the court held on the first Tuesday of November, 1860, when Wheeler recovered judgment against Beckwith for the sum of $226.90 damages, and $32.16 costs of suit, and took out execution on the judgment, and placed the same in the hands of an officer for service, who on the 8th of January, 1861, made demand upon Lewis as such trustee for the money in his hands due Beckwith; and Lewis paid the officer the sum of $185.44, which was indorsed by the officer on the execution.

Wheeler at the time gave Lewis his bond of indemnity against any loss which he might sustain by reason of the payment. Lewis was fully apprised of all the proceedings in the probate court against Beckwith at the time he made the payment, and also at the time the copy was left in service with

him, and he had notified one of the receivers of the pendency of the process of foreign attachment, and requested him to take care of it, which he promised to do.

Upon these facts the case was reserved for the advice of this court.

*Hubbard* and *Hickox*, for the defendants.*

1. The debt due Beckwith from Rogers never vested in Baldwin. It had no existence at the time of his appointment, because it had been paid over by Lewis to the sheriff before that time. The statute does not provide that all the estate owned by the debtor at the time of the application shall vest in the trustee, but that "the property shall at once, *upon said appointment,* become vested in said trustee, in as full and ample a manner as if the same had been voluntarily assigned or conveyed by such debtor at the time of the application to the court of probate for the appointment of such trustee." Stat. Comp. 1854, p. 513, sec. 2.

2. The tendency of such proceedings as were adopted under the application, if tolerated, would be to put the estate of an insolvent debtor beyond the reach of his creditors, and such proceedings should be deemed fraudulent in law as against the defendants. *Swift* v. *Thompson,* 9 Conn., 68; *Mills* v. *Camp,* 14 id., 225; *Meade* v. *Smith,* 16 id., 346; *Strong* v.

---

* A preliminary question was made as to which party should go forward in the argument. The issue was closed on a traverse of the defendants' rejoinder. On this state of pleading the court below made a special finding of the facts and reserved the case for the advice of this court as to the judgment to be rendered. The counsel for the defendants claimed that as the affirmative rested upon the defendants they should go forward. The plaintiff's counsel claimed that as the case came up for advice upon facts found, it stood precisely as it would have done if there had been an agreed statement of facts without any pleadings, or as if the facts had been found on any state of pleadings whatever; that the state of the pleadings was only important as determining the order of evidence and the burden of proof in the court below; and that the pleadings had now discharged their office, as the case had been fully heard and settled on the facts, and nothing was left but the question of law whether upon the facts the plaintiff had a case. The court was of opinion that the case stood in this court precisely as in the court below on the question of precedence, and that as the affirmative was by the pleadings on the defendants, their counsel should go forward.

*Carrier*, 17 id., 319; *Peck* v. *Whiting*, 21 id., 206; *Dibble* v. *Morris*, 26 id., 416.

3. The plaintiff should be estopped from claiming the debt as against the defendant, who may well say that he has been misled by the negligent and improper conduct of the parties to the insolvent proceedings. *Brown* v. *Wheeler*, 17 Conn., 345; *Preston* v. *Mann*, 25 Conn., 128; *Nicholson* v. *Hooper*, 4 Mylne & Craig, 179.

4. The money was paid over by the defendant under compulsion of law; and he is protected by the act concerning foreign attachments. *Palmer* v. *Woodward*, 28 Conn., 248; Rev. Stat., tit. 1, secs. 230, 232, 234.

*G. C. Woodruff*, with whom was *G. M. Woodruff*, for the plaintiff.

1. After proceedings in insolvency have been commenced a creditor can not attach and apply on execution a debt due the insolvent. The contrary doctrine is opposed to sound policy; would defeat the object of the statute, which is an equal distribution of the effects of a debtor among his creditors; and would offer inducements to creditors to delay the appointment of a trustee till they could collect their claims; and would thus favor collusion. By the 2d and 3d sections of the insolvent act the property vests in the trustee, by relation back to the time of the application, and a court of law must give the statute its legal effect. Stat. Comp. 1854, p. 513, sec. 2; see also sections 7, 8, 9, 13, 18; *Clark* v. *Minot*, 4 Met., 346; *Wickersham* v. *Nicholson*, 14 Serg. & R., 118.

2. There was no fraud in fact or in law in the proceedings. The court finds there was none in fact. There was none in law in the adjournments, because the statute authorizes such adjournments as are necessary; and it appears from the finding that these adjournments were necessary. The number of adjournments has no relevancy, except on the question whether there was fraud in fact, which is negatived.

3. The acts of Beckwith did not and could not render the proceedings invalid.

4. The creditor Wheeler had constructive notice of the pro-

ceedings; he might have made himself a party to them, and could have interfered to prevent any attempted wrong. The defendant Lewis was fully apprised of the proceedings and paid the money in his own wrong.

DUTTON, J. The defendant in this case was factorized on the 7th of February, 1860, as the debtor of an insolvent, against whom proceedings were commenced in January, 1859, but the trustee was not appointed until February, 1861, after twenty-one adjournments, most of which were had by the mutual consent of the applicants and the insolvent. The factorizing creditor had no actual knowledge of the application to the court of probate until he had obtained judgment in the original suit. When the defendant was factorized he had knowledge of the application, and he knew that the case was pending when demand was made on him on the execution in favor of the factorizing creditor. He, however, took security of the creditor and paid the money on the execution.

The defendant's counsel have tried to convince us that the debt due from the defendant never passed to the trustee, and that the trustee could take only such property as belonged to the insolvent when he was appointed. But we are clearly of the opinion that the statute on the subject is too explicit to admit of any such construction. The language of the statute is, " All the property of such debtor or debtors, both real and personal, of every kind and description and wheresoever found. (except as above excepted,) shall at once upon said appointment become vested in said trustee, in as full and ample a manner as if the same had been voluntarily assigned or conveyed by such debtor or debtors, to such trustee, *at the time of the application to the court of probate* for the appointment of such trustee." Stat., Comp. 1854, p. 513. We can not doubt that the intention of the legislature was that the change of title should be considered as having taken place when the application was made. Any other construction would enable an insolvent to dispose of all his property before a trustee should be appointed. But the statute evidently contemplated the appointment of the trustee within a short period of time.

The hardship of such a relation back would in many cases, if a long delay should intervene, be extreme. The facts found by the court in this case furnish a strong illustration of the injurious consequences of such a course. For more than two years after the application was served upon him the insolvent continued his business, buying and selling, and contracting and collecting debts as before. In this particular instance it appears that he kept the stock of his drug store nearly good. But suppose he had not. So far as the mere title is concerned, we do not see why the trustee could not reclaim the goods, or make the possessor liable, although they had been bought of the insolvent in good faith two years before, and had passed in the way of business through a dozen hands. The stock here was small, but the same rule must be applied where the insolvent's goods amount to thousands of dollars. Even in this instance, if the plaintiff can collect this debt, the trustee could probably bring and sustain an hundred actions of trover against innocent persons, to say nothing of actions of assumpsit and book debt. If this can be allowed, it looks very much like a reproach upon the law.

Although we hold to this doctrine of relation as applicable to this statute, we ought to take into consideration at the same time other statutes of equal force.

The statute regarding foreign attachment provides that the factorizing creditor, on praying out an execution, " may direct the officer serving the same to make demand of such attorney, agent, factor, trustee, or debtor, of any debt due to the defendant, and it shall be the duty of said debtor to pay the same." Also that " if such debtor shall not pay to the officer, when demanded, the debt due to the defendant at the time the copy of the writ was left with him, such attorney, agent, factor, trustee, or debtor, shall be liable to satisfy such judgment out of his own estate."

When a demand was made upon the defendant in this case he owed a debt to the insolvent. That debt might or might not be subsequently transferred by the proceedings in insolvency and the transfer relate back. What could the defendant do to relieve himself? How could he excuse himself for

not fulfilling a duty which then rested and for aught he could know would continue to rest upon him? Was he bound in a matter in which he had no personal interest to expose himself to a contingent liability of paying it, and the costs of a scire facias, out of his own effects? It is indeed provided in a subsequent section (sec. 234) that the garnishee may allow a scire facias to be brought against him, and then if he knows of some one who claims the debt as assignee or owner he may cite him in and leave the several claimants to contend for the debt. If in this case a trustee had been appointed before the demand was made upon the garnishee, he could have safely refused to pay, and allowed a scire facias to be brought, in which he could have cited the trustee in to try titles with the factorizing creditor. The statute says the party to be cited in is the claimant or claimants of the debt. But when the demand in this case was made upon the garnishee there was no claimant. The applicants to the court of probate were not then, and never have been since, owners of this debt or entitled to collect it. It would have been useless to have cited them in, as they would have had no right to appear. The garnishee, in the view of a majority of the members of the court, had a right, under these circumstances, to pay the money on the execution, and the law will protect him.

This view of the subject would dispose of this case, but would leave the question open whether the creditor could retain the money against the trustee.

We all concur in the opinion, although with some hesitation on the part of some of the members of the court, that on another ground judgment should be rendered for the defendants.

All the goods and effects of the insolvent were suffered to remain in his possession and subject to his control for more than a year after the application was made before the factorizing suit was brought. It appears that the factorizing creditor did not even know that such an application had been made. If he is chargeable with notice at all, it is by the doctrine of *lis pendens*. It would be carrying that doctrine very far to charge him with constructive notice of that application, when he has never made himself a party to the proceedings by prov-

ing his debt before the commissioners, and the insolvent's claim against the garnishee is not specifically named in them.

The policy of the law imperatively requires, as a general rule, that the possession of personal property should accompany the title. The trustee in this case represents those creditors of the insolvent who chose to present their claims to the commissioners. Before his appointment the applicants to the court of probate undertook to represent these creditors. The principal creditors individually had a right to make themselves parties to the proceeding. Now it appears that all the parties to the application voluntarily allowed it to rest, and the property to remain in possession of the insolvent, for more than two years, and until after the factorizing creditor had brought his suit, kept it in court about a year, obtained judgment, made a demand on the execution, and obtained the money. The difficulty has all arisen from this voluntary delay on the part of the creditors and those who represented them. In addition to this it appears that one of the applicants was notified of this factorizing suit, and agreed with the garnishee to take care of it. Now we think that no reasonable excuse has been shown for this long retention of possession by the insolvent; that the creditors and those who represented them, by procuring this delay, and allowing the insolvent to treat the property, including the debts, as his own, gave the defendant reason to believe that he could safely pay the money to the officer, and that they ought not now to be allowed to recover it from the garnishee.

But it is strongly insisted on the part of the plaintiff that we are not at liberty to put the case on this ground, because the superior court has found that "the adjournments of the court of probate were obtained for reasons presented to and approved by the court of probate, and were by said court deemed necessary and proper for the interests of said Litchfield Bank (the applicant) and the creditors of the insolvent," and the superior court finds that all said adjournments were for good and substantial reasons. What these reasons were we have no means of judging, as none are stated. We can conceive of no reasons that would justify such a delay of taking possession, in itself considered. We are bound to presume that there were

other considerations of more importance to the Litchfield Bank than the danger of loss incurred by the want of possession. We can easily conceive that there were considerations which, so far as the parties appearing before the court of probate were concerned, would justify that court in its action.    But the factorizing creditor and the garnishee ought not to be prejudiced by such proceedings.    Their interests were not consulted.   The factorizing creditor was not personally notified, and he has never made himself a party to them by proving his debt before the commissioners.    We think therefore that however regular the proceedings may have been before the court of probate, the creditors who are represented by the trustee are chargeable with such a want of diligence in allowing the goods and debts to remain so long in the possession and under the control of the insolvent, as ought to protect this creditor in factorizing this debt.    At the same time we wish it understood that if the trustee had been appointed and had taken possession of the estate of the insolvent in a reasonable time, the mere possession of the insolvent between the time of the application and that of taking such possession by the trustee would not have exposed it to an attachment.

We advise judgment for the defendants.

In this opinion the other judges concurred.